## CIRCUIT COURT OF WARREN COUNTY

Cherokee Corp.,
Trustee, et al.

v.

Chicago Title Ins. Corp. et al.

### Case No. (Law) L93000228

BY JUDGE PAUL M. PEATROSS, JR.

### July 1, 1994

Counsel appeared before the Court on June 1, 1994, and presented argument on a number of motions pending before the Court in the above case. The Court took the motions under advisement to review authority and argument of counsel.

The Court will rule on the motions in the order that they were argued on June 1, 1994.

*Motion to Dismiss of James A. Drown, Substitute Trustee*

Defensive pleading in Virginia does not include a Motion to Dismiss under the Rules of the Supreme Court of Virginia. Modern day practice in Virginia recognizes the use of the demurrer to test the legal sufficiency of a cause of action. See T. Boyd, E. Graves, L. Middleditch, Jr., *Virginia*

*Civil Procedure*, § 8.2 (1982). Accordingly, the Court is going to treat the Motion to Dismiss as a demurrer to the Motion for Judgment of plaintiffs.

### I. *Parties Plaintiff*

In paragraphs 1, 2 and 3 of the Motion to Dismiss, now treated as a demurrer, James A. Drown, substitute trustee, challenges whether a cause of action has been stated by all the named plaintiffs. Upon reviewing the Motion for Judgment, it is clear that Cherokee of Linden, Virginia, Inc., was the owner of the real estate on which the ski resort in question had operated at the time of foreclosure. (Paragraphs 2, 3, 4, and 5 of the Motion for Judgment). Facts regarding other named plaintiffs, Cherokee Corporation, Trustee, Occoquan Land Development Corporation, R. E. Adkins and B. G. Oliver, do not allege property ownership or interest in the real estate in question sufficient to state a cause of action against the named defendants. Accordingly, for the reasons stated in argument of counsel, and based upon a review of the Motion for Judgment, the demurrer is sustained as to all parties named as plaintiffs except Cherokee of Linden, Virginia, Inc.

### II. *Remedies Available*

The second argument on the Motion to Dismiss, treated as a demurrer, is that Cherokee of Linden, Virginia, Inc., hereinafter referred to as "Cherokee," only had three remedies available to it to challenge the actions of Mr. Drown as substitute trustee. Those remedies were as follows:

1. Seek an injunction from the Circuit Court enjoining the sale;

2. Note exceptions to the report of the trustee's settlement of accounts to the Commissioner of Accounts within the time permitted by statute; or

3. File a suit in equity to surcharge and falsify the report of the trustee.

Mr. Drown also asked the Court to take judicial notice of a case pending in the Circuit Court of Warren County styled *In re Settlement of Accounts of James A. Drown, Trustee, of the sale under deed of trust from Cherokee Corporation, Cherokee Corporation, Trustee, Cherokee Corporation of Linden, Virginia, Inc., Cherokee Corporation of Linden, Virginia, Inc., Trustee and Occoquan Land Development Corporation*, Case No. WF93-15.

Counsel for Mr. Drown represented that objections to the approval of the trustee's report by the Commissioner of Accounts have been filed by Cherokee Corporation of Linden, Virginia. In fact, since the June 1, 1994, hearing, the undersigned has been designated to hear the objections.

In considering the relief permitted in a suit to surcharge or falsify the report, "surcharge" is defined as "[t]he amount with which a court may charge a fiduciary who has breached his trust through intentional or negligent conduct. The imposition of personal liability on a fiduciary for such conduct." *Black's Law Dictionary* 1292 (5th ed. 1979).

The question then becomes whether or not this is a suit to surcharge or falsify the report. Although it is titled a Motion for Judgment, the claims of Cherokee against Drown ask for a monetary judgment for compensatory damages and treble damages, an award of attorney's fees, and a declaration by the Court that the conveyance of the property to Capital Skiing Corporation be declared void and title be returned to plaintiffs.

Clearly, the Court cannot grant relief in a motion for judgment on the law side of the court to declare the transfer of the property to Capital Skiing Corporation void and return title to the plaintiffs. For reasons herein addressed, *supra*, on the pleading filed by Chicago Title Insurance Corporation, the Court will transfer the claims against James A. Drown, Substitute Trustee, from the law side of the Court to the equity side of the Court pursuant to § 8.01-270 of the Code of Virginia of 1950, as amended. Therefore, the question becomes whether or not the claims of the remaining plaintiff herein amount to a suit in equity to surcharge and falsify a report of the trustee.

A court in equity obtains jurisdiction on the basis of the requested relief of declaring the sale to Capital Skiing Corporation void; it may retain the case for all purposes and administer complete relief. Accordingly, the Court in equity would have authority to determine monetary damages as a result of declaring any sale void because of improper conduct of a trustee. See *Shield v. Brown*, 166 Va. 596 (1936), and *E.I. DuPont de Nemours & Co. v. Temple*, 272 F. 456 (4th Cir. 1921).

However, in interpreting § 26-34 of the Code of Virginia, it is clear that the statute addresses two methods of attacking a report of a fiduciary. One is to file exceptions to the report and the other is to file a suit to surcharge or falsify the report. The Motion for Judgment filed in this case is not a claim attacking the report of the Trustee, James A. Drown. Therefore, the Motion to Dismiss (demurrer) is denied and the statute is not a bar to this claim against the Trustee.

### III. *Merits of Claim*

The next argument under the Motion to Dismiss (demurrer) advanced by Mr. Shmidheiser went to the merits of the claim against Mr. Drown as

to his negligence in allowing the sale to go forward on November 30, 1992. Cherokee alleged that Drown was negligent because he did not offer the parcel separately as advertised, but offered the entire property as a whole. If Mr. Shmidheiser is addressing the "Second Claim for Relief" contained in the Motion for Judgment, it does not appear that the allegation that Mr. Drown failed to sell by parcel rather than the whole is pertinent to the claim. Therefore, the demurrer as to the Second Claim for Relief is denied.

The second claim of negligence on the merits against Drown is that he did not provide title insurance per the advertisement. This argument seems to apply to the "Third Claim for Relief" against Mr. Drown. The argument is that the announcement that Chicago Title would not insure the title on the 350 acres was contrary to the provision of the deed of trust. However, the claim does not rely on the allegation that Drown conducted the sale contrary to the advertisement as to title insurance. Therefore, the Motion to Dismiss (demurrer) as to the Third Claim for Relief is denied.

## IV. *Recovery of Damages*

The final argument under the Motion to Dismiss (demurrer) by Drown is that Cherokee cannot recover for damages because it is asking the Court to void the sale. If that were done, the foreclosure sale would be set aside and the property readvertised for foreclosure under the deed of trust. Accordingly, no damages would exist.

In reviewing the Motion for Judgment, the Second Claim for Relief against James A. Drown, Trustee, is a claim for breach of fiduciary duty resulting in damages to the plaintiff. The Third Claim for Relief is a hybrid claim that the conveyance is void but that damages should still be awarded.

In support of the Motion to Dismiss (demurrer), Mr. Shmidheiser cites authority that the only available remedy for improper conduct by a trustee is to void the sale. In essence, he argues that if the Court determines that the trustee's conduct was improper, the sale should be voided and no damages lie.

Plaintiff is relying on a pure monetary claim for damages under the Second Claim for Relief. However, if plaintiff prevails either under its Second Claim or Third Claim, misconduct will be proved against the trustee and the only available remedy under Virginia law is to set aside the sale. There is no case in Virginia which holds that the trustee is liable in monetary damages for misconduct of a foreclosure sale. None of the cases

cited in the Supplemental Memorandum of plaintiff dated June 21, 1994, support a claim for monetary damages. Accordingly, the Motion to Dismiss (demurrer) as to damages under the Second and Third Claims for Relief against Drown are sustained. The net effect is that the Second Claim is struck and the Third Claim remains alive as to whether or not the sale should be voided.

### Motion to Dismiss, Plea in Bar and Demurrer of Chicago Title Insurance Company

The Court is treating the Motion to Dismiss as a demurrer filed by Chicago Title Insurance Company. The Motion to Dismiss addresses the status of the parties named as plaintiffs and the Court makes the same ruling as herein previously noted. It sustains the now demurrer of Chicago Title Insurance Corporation to dismiss all parties as plaintiffs except Cherokee of Linden, Virginia, Inc.

In paragraph 4 of the Motion to Dismiss, now demurrer, Cherokee of Linden, Virginia, Inc., was alleged to have been in a revoked status as of September 1, 1992. The Court was requested to take no action on this motion regarding the revocation of Cherokee and a ruling on that motion is held in abeyance.

In paragraph 9 of the Motion to Dismiss, now demurrer, Chicago Title raises the question of a request for inconsistent remedies. The Court has ruled that pursuant to § 8.01-270 of the Code of Virginia of 1950, as amended, it is transferring the claim against James A. Drown, Substitute Trustee, case to the equity side of the Court.

As to the plea in bar, Chicago Title says that the claim for negligence and slander of title is not brought within the applicable one year period of limitations under § 8.01-248 of the Code. Contrary to any representation by plaintiffs in their memorandum of June 21, 1994, the statute of limitations is raised by a plea in bar and not by a demurrer by Chicago Title.

In reviewing the Motion for Judgment, it is alleged that the foreclosure sale took place on November 30, 1992. See paragraph 6 of Motion for Judgment. Furthermore, it is alleged in paragraph 25 that the announcement of the withdrawal of title insurance on the 350 acres by Chicago Title amounted to slander and this occurred on the same day of sale, per paragraph 24 of the Motion for Judgment, which was November 30, 1992. As represented by Mr. Patterson, and without any disagreement from counsel for the defendants, the Motion for Judgment was filed on November 30,

1993. Accordingly, the Court finds that the action for slander is not barred by the one year statute of limitation.

As to the negligence claim, which is the Eighth Claim for Relief in the Motion for Judgment, paragraph 56 of the Motion for Judgment alleges that Chicago Title was negligent in researching the chain of title of the property prior to committing to insure the title. No date is alleged as to when Chicago Title committed to insure title. Accordingly, the Motion for Judgment is not clear as to the date of the alleged negligence and the plea in bar as to the negligence claim is denied.

The Court is aware that the defendant, Chicago Title Insurance Company, relies on matters deemed admitted to the Request for Admissions propounded by Chicago Title. It is also aware of the request of Cherokee to withdraw its admissions and for leave to file late answers to the Request for Admissions.

The Court will hold a hearing, if one is necessary, on whether or not the admissions will be permitted to be withdrawn as the Court did not hear the merits of that motion on June 1, 1994.

As to the demurrer filed by Chicago Title, Cherokee's "First Claim for Relief" claims slander by an announcement made by Drown on November 30, 1992. No specific words constituting slander were alleged. Plaintiff must allege that Chicago Title made false statements regarding the property in order to state a claim. Furthermore, the exact words stated need to be alleged.

Accordingly, the demurrer to "First Claim for Relief" is sustained and leave is granted to Cherokee to amend its claim if it so desires within fourteen days of the date of the entry of an order reflecting this ruling.

The "Seventh Claim for Relief" is a breach of contract action against Chicago Title Corporation. The demurrer filed by Chicago Title says that the Motion for Judgment is deficient because there is no allegation that Chicago Title was in privity with Cherokee. Only a party to the contract or someone in privity with a party may bring a cause of action. Cherokee answers that it was a third-party beneficiary.

A review of the Motion for Judgment does not indicate the party with whom Chicago Title contracted for title insurance coverage. James A. Drown, Substitute Trustee, was the moving party on the foreclosure and he advertised that he intended to make available at the sale a commitment for owner's title insurance policy. See advertisement attached as an exhibit to the Answer of James A. Drown, Substitute Trustee, filed herein. Of course, Mr. Drown was acting on behalf of the note holder, Capital Skiing Cor-

poration, who was directing the trustee to foreclosure. Capital Skiing Corporation is also a possible party in contract with Chicago Title, but the pleadings do not make it clear.

In order for a third-party beneficiary to prevail, it must show that the primary parties to the contract clearly and definitely intended to confer a benefit upon it. See *Copenhaver v. Rogers*, 238 Va. 361 (1989). Furthermore, incidental beneficiaries may not sue as third-party beneficiaries. See *Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.*, 220 Va. 135 (1979).

The demurrer to the Seventh Claim for Relief is sustained because sufficient facts are not alleged to show the identity of the contracting parties and, once identified, how they intended to confer a benefit to Cherokee. Leave is granted to Cherokee to file an amended pleading alleging sufficient facts to go forward as a third-party beneficiary or show privity of contract with Chicago Title within fourteen days of the date of the entry of an order reflecting this ruling.

With respect to the Eighth Claim for Relief, one of negligence against Chicago Title, the same ruling applies because Cherokee has not identified parties to the contract. Therefore, the duty owed regarding the research of the chain of title is not clear and there are not sufficient facts to show either privity of contract or recovery under a third-party beneficiary theory. Leave is granted to Cherokee to amend its pleading within fourteen days of the date of the entry of an order reflecting this ruling.

Regarding the Motion for Summary Judgment filed by Chicago Title Insurance Company, it has become moot in light of the above rulings.

### Motion of Plea in Bar, Motion in Abatement, and Demurrer of Kaufman and Canoles, P.C.

Mr. Trenga requested that the Court defer a ruling on the Plea in Bar until a ruling was made as to the identity of the proper plaintiff in this case. The Court granted that motion.

Regarding the Motion in Abatement, Mr. Trenga also asked for a deferral on a ruling on that motion until the Court had ruled on the identity of the proper party-plaintiff and to see if Cherokee redeemed its good standing with the State Corporation Commission.

Turning to the demurrer, the Court adopts as its ruling as to the proper party-plaintiff that Cherokee of Linden, Virginia, Inc., is the only proper plaintiff and sustains the demurrer as to the other parties filed by Kaufman and Canoles.

With respect to the demurrer to the "Fourth Claim for Relief," both sides agree that *McDonald v. Stuart*, 289 Minn. 35, 182 N.W.2d 437 (1970), is the applicable rule of law.

A review of paragraphs 37 and 38 of the Motion for Judgment do allege facts concerning directions given to Drown by Kaufman and Canoles. The facts, however, must allege that the attorneys were motivated by their own personal interest, which is not alleged, or that they knowingly participated with their client in the perpetration of a fraud or unlawful act. There are no facts which allege that there was participation with Capital Skiing Corporation, their client, or that the two perpetrated an unlawful act upon Drown. The Motion for Judgment does state facts from which fraud could be inferred, but lacking is a claim of participation with Capital Skiing Corporation. Therefore, the demurrer is sustained with leave to Cherokee to amend within fourteen days of the date of this letter opinion.

As to the remaining claims under paragraphs 7 through 12 of the demurrer, the Court has already ruled on transferring the claim against Mr. Drown to the equity side of the Court. The demurrer for multifariousness is denied. However, the demurrer as to the attorney's fees is sustained as plaintiff has shown no authority to support an entitlement to attorney's fees.

November 28, 1994

Before the Court is the Plea in Bar, Demurrer, and Motion for Summary Judgment filed by Kaufman & Canoles to the Amended Motion for Judgment filed by Cherokee Corporation. Oral argument was heard on the Plea in Bar and Demurrer on October 11, 1994. Further, memoranda were submitted on the question of the Motion for Summary Judgment for consideration by the Court.

*Plea in Bar*

Defendant Kaufman & Canoles, P.C., requests that the Court dismiss, on the ground that the claims are barred by the applicable statute of limitations, the second, third, and fourth claims for relief in Plaintiff Cherokee's Amended Motion for Judgment filed against Kaufman & Canoles. To determine whether to grant this request, the Court must consider (1) whether the filing of the Plaintiffs' original Motion for Judgment tolled the statute of limitations, and (2) what the applicable statute of limitations for each of Plaintiffs' claims is.

## A. *Whether the Statute of Limitations Was Tolled*

Plaintiffs' cause of action accrued no later than November 30, 1992, and Plaintiffs filed their original Motion for Judgment on November 30, 1993. After this Court rendered a letter opinion on July 1, 1994, granting Cherokee leave to amend its pleading, Plaintiffs filed their First Amended Motion for Judgment on July 15, 1994. Defendant argues the filing of the original Motion for Judgment did not toll the applicable statute of limitations and proffers in support of that argument the recent Supreme Court case of *Vines v. Branch*, 244 Va. 185 (1992).

In *Vines*, the Court considered whether to permit a plaintiff to amend an original Motion for Judgment, which alleged "a tort action for the recovery of personal property," such that the amended Motion for Judgment alleged both a breach of an oral contract and trespass. *Id.* at 186-87. The Court *held* the following rule to apply:

> Where an amendment introduces a new cause of action and makes a new or different demand not introduced in the original motion for judgment, the amended action will not relate back to the beginning of the action so as to toll the statute of limitations. Instead, the amended action becomes the equivalent of a different suit and the statute continues to run until the amendment is filed.

*Id.* at 189 (citing *Irvine v. Barrett*, 119 Va. 587, 592 (1916)).

The Court also reiterated the test for determining whether a new cause of action is alleged in an amendment: "[I]nquire if a recovery had upon the original complaint would be a bar to any recovery under the amended complaint, or if the same evidence would support both, or if the same measure of damages is applicable." *Id.* at 189 (citing *Irvine*, 119 Va. at 591).

The *Vines* court held that the plaintiff's claim for breach of an oral contract did more than "vary the mode of demanding the same thing" and therefore was a new substantive cause of action which was barred by the applicable statute of limitations. *Id.* at 188-89.

In the instant case, Plaintiffs initially alleged only one claim for relief against Kaufman & Canoles: (1) knowing participation in a breach of trust. In the Amended Motion for Judgment, Plaintiffs allege, supplemental to the original claim, three additional claims for relief against Kaufman & Canoles: (2) business conspiracy, (3) civil conspiracy, and (4) tortious interference with a business relationship.

On its face, the Amended Motion therefore indicates that it introduces a new cause of action. Moreover, applying the *Vines* test, recovery is not mutually exclusive, different evidence is required, and a different measure of damages is applicable as between the first and the latter three claims. *See Id.* at 189. Thus, the Court concludes that the second, third, and fourth claims of the Amended Motion for Judgment should not relate back to the date of the filing of the original Motion for Judgment. Consequently, if the applicable statute of limitations for any of those claims is less than twenty months (the approximate interval between November 30, 1992, and July 15, 1994), that claim will be time barred.

### B. *The Applicable Statute of Limitations*

#### 1. *Second Claim: Business Conspiracy*

Plaintiffs allege that Defendant conspired with Capital Ski and with Drown to injure Plaintiffs' business by conveying Plaintiffs' property to Capital Ski in violation of §§ 18.2-499 and 18.2-500 of the Virginia Code, as amended. *See* AMJ ¶ 28. The question is whether the Plaintiffs' action for the alleged business conspiracy involves injury to person or injury to property. The statute of limitations for personal injury actions is two years, Va. Code Ann. § 8.01-243(A) (Michie's 1992); the limitation on actions for injuries to property is five years, Va. Code Ann. § 8.01-243(B) (Michie's 1992); and the limitation on actions otherwise unspecified is one year. Va. Code Ann. § 8.01-248 (Michie's 1992).

Plaintiffs assert that the five-year statute of limitations governs claims for business conspiracy and cite *Federated Graphics Cos. v. Napotnik* in support of this contention. 424 F. Supp. 291 (E.D. Va. 1976). In *Federated Graphics*, the plaintiff alleged that the defendants (1) instituted involuntary bankruptcy proceedings against the plaintiff and (2) attempted to unduly influence plaintiff's creditors to join in that petition for bankruptcy. *Id.* The court found that the second claim, which was brought under §§ 18.2-499 and 18.2-500, was governed by the five-year limitation period for injuries to property because an "injury to one's business is clearly an injury to one's property interest." *Id.*

Defendant argues, however, that all actions involving property do not necessarily fall within the scope of the five-year statute of limitations. *See J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n*, 237 Va. 155 (1989). In *J.F. Toner & Son, Inc.*, the Supreme Court considered which statute of limitations applied to a claim which alleged a fraudulently induced loss of both personal and corporate assets. *Id.* at 156-57. Plaintiffs argued that

Virginia's five-year statute of limitations applied to their claim because they suffered a loss of all use, enjoyment, and value in their property due to the alleged fraud. *Id.* at 158. The court rejected plaintiffs' argument, however, stating that the one-year statute of limitations of § 8.01-248 of the Virginia Code, as amended, applied:

> The defendants' alleged fraud had no effect upon the plaintiffs' property. The property had the same form, the same value, and was adapted to the same uses after the defendants' actions as before. The defendants are *simply alleged to have persuaded the plaintiffs to part with it.* Thus, the allegedly wrongful acts were aimed at the persons of the plaintiffs. Rather than injuring their property, the alleged wrongs caused them to sustain "financial damage personal to the individual . . . . "

*J.F. Toner & Son, Inc.*, 237 Va. at 158, citing *Pigott v. Moran*, 231 Va. 76 (1986) (emphasis added).

The *J.F. Toner* court further stated, however, that "[b]ecause fraud invariably acts upon the person of the victim rather than upon property, its consequence is personal damage rather than injury to property." *Id.* Thus, in determining that a one-year limitation applied, the court relied on the nature of fraud actions themselves. In the instant case, the action is one for conspiracy rather than for fraud. According to the *Federated Graphics* court, all actions brought under §§ 18.2-499 and 18.2-500 concern injuries to property and are therefore governed by a five-year statute of limitations. *See* discussion *supra*. Thus, the Court finds that the Plaintiffs' second claim for relief is not time barred.

### 2. Third Claim: Civil Conspiracy

Plaintiffs allege that Defendant conspired with Capital Ski and with Drown to "commit improper and unlawful acts to attain unlawful purposes." *See* AMJ ¶ 32. The purposes allegedly include the conveyance of Plaintiffs' property to Capital Ski and the destruction of Plaintiffs' business. *Id.* Thus, Plaintiffs asserts, Defendant conspired (1) to breach Plaintiffs' contractual rights, (2) to breach the criminal conspiracy statute (Va. Code Ann. §§ 18.2-499 and 18.2-500 (Michie's 1992)), and (3) to breach Drown's fiduciary duties. *Id.*

In determining the statute of limitations for claims of civil conspiracy, it is necessary to examine the nature of the alleged underlying injury.

> The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means. In other words, the basis of the action is the wrong which is done under the conspiracy and which results in damage to the plaintiff.

*Gallop v. Sharp*, 179 Va. 335, 338 (1942).

### a. *Civil Conspiracy to Induce Breach of Contractual Rights*

The Supreme Court has determined that an action in tort will lie against those who conspire to induce the breach of a contract and that an action will lie even against a party to the contract. *Worrie v. Boze*, 198 Va. 533, 540 (1956). In *Worrie*, the plaintiffs owned a dance studio and had hired the defendants as dance instructors. *Id.* at 534. The defendants' contracts included covenants not to compete during or within two years following the defendants' employment with plaintiffs. *Id.* Upon termination of their employment, however, defendants opened a dance studio in violation of their contracts with the plaintiffs, and plaintiffs subsequently filed a motion for judgment alleging conspiracy to breach a contract. *Id.* at 535. Noting that "the right to performance of a contract and the right to reap profits therefrom are property rights," the Court held that the five-year statute of limitations of Code § 8-24 (current version at Va. Code Ann. § 8.01-243 (Michie 1992) was applicable:

> [The plaintiffs'] claim is that their business or estate, their property in their contract with Worrie, was destroyed by reason of the acts of the defendants done in pursuance of their conspiracy. Moreover, they allege that pursuant to their conspiracy, the defendants solicited the plaintiffs' customers and thus deprived the plaintiffs of some of their business. Clearly, under these allegations, the wrong done and damage done are directed to the estate or property of the plaintiffs and not to them personally.

*Id.* at 536-37 (citation omitted). Thus, according to *Worrie*, it seems that the instant case for conspiracy to breach a contract would also be governed by the five-year statute of limitations.

Defendant, however, argues that a one-year limitation applies. *See* Va. Code Ann. § 8.01-248 (Michie 1992). Defendant cites *Johnson v. Plaisance*, 25 Va. Cir. 264 (City of Charlottesville 1991), for the proposition

that the tort of interference with a contractual relationship is governed by the one-year limitation period.

In *Johnson*, the plaintiff was a registered nurse whose employment defendant Plaisance terminated upon receiving information that plaintiff, who had a prior history of alcoholism, had begun drinking again. *Id.* at 265. Defendant also reported plaintiff to the Virginia Board of Nursing as being unfit to practice as a nurse. *Id.* Plaintiff alleged that defendant's "interfer[ence]" resulted, *inter alia*, in her loss of employment contracts. *Id.* at 266. The Court held that a one-year statute of limitations applied, noting that the claim asserted a personal as opposed to a property action. *Id.*

Viewed in juxtaposition, *Worrie* and *Johnson* suggest that the primary issue in determining the appropriate statute of limitations is whether the action is personal or whether the action concerns property: if otherwise unspecified, the statute of limitations is one year if the action is personal in nature, but is five years if the action concerns property. The *Worrie* court found that the contractual right at issue was a property right, 198 Va. at 536, but the *Johnson* court found that the plaintiff's contractual relationship claim did not involve a property right. 25 Va. Cir. at 266.

In the instant case, Plaintiffs have not specifically alleged which contractual rights have been breached. *See* AMJ ¶ 33. Assuming that the contract at issue is that between Plaintiffs and Drown regarding the sale of the property, the Court finds that *Johnson* is applicable rather than *Worrie*, as the essence of the Plaintiffs' claim is that Defendant interfered with the relationship between Drown and Plaintiffs, thus causing Plaintiffs to suffer loss. Thus, the one-year statute of limitations bars the Plaintiffs' claim of conspiracy to breach a contract.

### b. *Civil Conspiracy to Breach §§ 18.2-499 and 18.2-500*

Plaintiffs, in this aspect of their claim for relief, seem to allege a civil conspiracy to commit a criminal conspiracy. This allegation, however, seems only to reiterate Plaintiffs' "Second Claim for Relief" of business conspiracy. *See supra.*

### c. *Civil Conspiracy to Breach Drown's Fiduciary Duties*

In Plaintiffs' final mentioned claim for civil conspiracy, Plaintiffs allege that Defendants conspired to breach Drown's fiduciary duties. Applying Virginia law, a fourth-circuit court has held that the one-year statute of limitation period for which no limitation is otherwise prescribed is appli-

cable to actions for breach of fiduciary duty. *See LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n.*, 830 F.2d 522, 527 (4th Cir. 1987), *cert. denied*, 484 U.S. 1065 (1988). Although Plaintiff asserts that *LaVay* is inapposite because it involved a claim of fraud, that court did not employ language limiting its holding regarding the statute of limitations to that case. *See id.* Thus, Plaintiffs' claim against Defendant for conspiracy to breach a fiduciary duty is time barred.

### 3. *Fourth Claim: Tortious Interference with Business Relationships*

Plaintiffs' fourth claim against Defendant is that Defendant tortiously interfered with Plaintiffs' business relationship with Drown. *See* AMJ ¶ 37. For the purposes of determining the appropriate statute of limitations, this claim has already been addressed, *supra*, in section I.B.2.a. As concluded in that discussion, the applicable statute of limitations for tortious interference with a business relationship is one year.

## II. *Demurrer*

The Amended Motion for Judgment lists the following as plaintiffs: Cherokee Corp., Trustee; Cherokee of Linden, Virginia, Inc.; Occoquan Land Dev. Corp.; B.G. Oliver; and R.E. Adkins. By means of a letter opinion of July 1, 1994, however, the Court has already adjudged the only proper party-plaintiff to be Cherokee of Linden, Virginia, Inc. Therefore, Defendant's demurrer as to the other parties filed should be sustained. Consequently, all references to the plaintiff herein will be singular.

At issue is the demurrer of Defendant Kaufman & Canoles, P.C., to the First Amended Motion for Judgment of Plaintiff Cherokee Corporation. In its motion, Plaintiff submitted four claims for relief: (1) knowing participation in a breach of trust, (2) business conspiracy, (3) civil conspiracy, and (4) tortious interference with a business relationship. The fourth claim is time barred. The third claim survives only with respect to a claim for civil conspiracy to commit a business conspiracy; therefore, the third and second claims will be addressed simultaneously.

### A. *First Claim: Knowing Participation in Breach of Trust*

In a letter opinion dated July 1, 1994, this Court found Plaintiff's original Motion for Judgment (in which the only claim against Defendant was for knowing participation in a breach of trust) insufficient to withstand Defendant's demurrer. The Court noted that both parties had stipulated *McDonald v. Stuart*, 289 Minn. 35, 182 N.W.2d 437 (1970), as authorita-

tive and as providing the general rule regarding attorney liability to third parties:

> [A]n attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship. This immunity, to be sure, may not be invoked if the attorney, exceeding the bounds of this unique agency relationship, either is dominated by his own personal interest or knowingly participates with his client in the perpetration of a fraudulent or unlawful act.

182 N.W.2d at 440 (emphasis added). In *McDonald*, the relationship with which Plaintiff alleged Defendant interfered was between Plaintiff and Defendant-attorney's client. In the instant case, however, the relationship with which Plaintiff alleges Defendant interfered is not between Plaintiff and Defendant-attorneys' client, Capital Ski, but rather the relationship between Plaintiff and the trustee of the subject property, Drown.

While this Court found that sufficient facts had been alleged from which fraud could be inferred, the original Motion for Judgment lacked sufficient facts to allege either that the attorneys of Kaufman & Canoles had acted pursuant to personal interests or that Kaufman & Canoles had acted in collusion with Drown. Plaintiff's Amended Motion for Judgment differs from its original Motion only by the addition of one paragraph:

> Upon information and belief, [Kaufman & Canoles] acted in concert with Cap Ski and Drown to unlawfully convey Plaintiffs' real property to Cap Ski. [Kaufman & Canoles] knowingly and willingly participated in this fraudulent and illegal act.

*See* AMJ ¶ 25. Thus, on its face, the Amended Motion does not contain facts which allege that Kaufman & Canoles' attorneys acted pursuant to their own personal interests. Moreover, no such allegation may be reasonably inferred, as the logical conclusion from the aforementioned facts is that Kaufman & Canoles simply pursued the best interests of its client.

The Amended Motion does explicitly allege, however, that Kaufman & Canoles "acted in concert" with Capital Ski and with Drown. *Id.* However, omitting the legal conclusion implied by "unlawfully" with respect to the conveyance, the fact that Kaufman & Canoles "acted in concert" with Drown does not necessarily imply a knowing breach of trust. For example, Kaufman & Canoles' attorneys and Drown were both involved in the sale of the property; working "in concert" to convey is part of the

business transaction between buyer and seller. Yet, an improper motive can be inferred from the allegation; and a complaint, no matter how unartfully pleaded, must survive a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *See Islam v. Jackson*, 782 F. Supp. 1111 (E.D. Va. 1992).

Accordingly, the Defendant's demurrer must be overruled.

## B. *Second Claim: Business Conspiracy*

Plaintiff alleges that Defendant conspired with Capital Ski and with Drown. AMJ ¶ 28. However, the intra-corporate conspiracy doctrine holds that a corporation cannot conspire with its own agents. *See Flinders v. Datasec Corp.*, 742 F. Supp. 929 (E.D. Va. 1990). Defendant, as Capital Ski's counsel, was an agent of Capital Ski during the time period in issue and therefore cannot have conspired with Capital Ski. Accordingly, Plaintiff's allegations will be reviewed only in light of Defendant's alleged conspiracy with Drown.

Plaintiff alleges that Defendant conspired with Drown to injure Plaintiff in its trade and business in violation of §§ 18.2-499 and 18.2-500 of the Virginia Code, as amended. AMJ ¶ 28. Plaintiff does not, however, allege that the primary and overriding purpose of the conspiracy, if it existed, was to injure Plaintiff maliciously rather than to benefit Defendant's client financially. *See Gerald A. Schultz & Assoc. v. LaLonde*, 17 Va. Cir. 387, 388 (City of Richmond 1989). To the contrary, Plaintiff's Amended Motion for Judgment suggests that the alleged conspiracy generally "insured that the note holder [Capital] Ski [Defendant's client] could acquire the Property at a sacrifice price." AMJ ¶ 14.

Courts have interpreted the business conspiracy statutes as targeting only that conduct which is motivated by an intent to injure a business directly. *See id.*; *see also, Nationwide Mutual Fire Ins. Co. v. Jones*, 577 F. Supp. 968 (W.D. Va. 1984). A federal court interpreted the Virginia statutes to apply to any malicious conduct which injures business but added one qualification:

> [S]uch conduct must be directly aimed toward damaging the business, trade, reputation or profession: The injury must not be a result or secondary effect of an action taken for mere personal gain . . . . These statutes are inapplicable to one isolated incident in which a combination of persons defraud a company for their own personal enrichment.

*Nationwide*, 577 F. Supp. at 970-71. Plaintiffs have failed to allege that Defendant acted maliciously and instead have suggested with their pleadings that Defendant, if a conspirator, acted pursuant primarily to its own and/or to its client's interests.

Therefore, the Defendant's demurrer regarding the second claim for business conspiracy must be sustained. Consequently, the third claim involving civil conspiracy to commit a business conspiracy also fails.

### III. *Motion for Summary Judgment*

To be considered in Defendant's Motion for Summary Judgment is Plaintiff's sole remaining claim against Defendant, knowing participation in a breach of trust. *See* discussion *supra* part II.A. Summary judgment should be granted when no material fact is genuinely in dispute and the moving party is entitled to judgment as a matter of law. *See* Va. S. Ct. Rule 3:18. In this case, assuming all alleged facts to be true, the weight of the evidence does not support Plaintiffs' claim that Defendant knowingly participated with Drown in a breach of trust.

Plaintiff alleges that Defendant "directed" Drown to proceed with the auction with full knowledge that Drown would thereby breach his fiduciary duty to Plaintiff and that Defendant "acted in concert" with Capital Skiing to "unlawfully convey" Plaintiff's property to Capital Skiing. AMJ ¶ 23-25. In responding to Defendant's interrogatories concerning these allegations, Plaintiff incorporated the deposition testimony of James Drown. *See* Def. Exhibit 1. Drown's testimony, however, is wholly insufficient to render Plaintiff's claim colorable, for Drown does not implicate Kaufman & Canoles in any wrongdoing.

Plaintiff's response to Defendant's Motion for Summary Judgment is that a motion for summary judgment cannot be sustained when based, in whole or in part, on deposition testimony. *See* Va. S. Ct. Rule 4:7(e). Plaintiff's reliance on the rule is misplaced in this case; however, as Plaintiff has incorporated by reference Drown's deposition into its answers to Defendant's interrogatories, thereby making the testimony therein part of the answers themselves. Thus, as summary judgment may be based on interrogatories, *see* Va. S. Ct. Rule 4:8(e), summary judgment in this case is proper.

Thus, the Defendant's Motion for Summary Judgment is granted. Consequently, the Plaintiff has no outstanding claims against Defendant, Kaufman & Canoles, P.C.